**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**March 2, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,,

    Plaintiff - Appellee,

v.

    No. 05-4246

JESUS SALVADOR ZEPEDA-
LOPEZ,

    Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**(D.C. No. 1:03-CR-00062-TC)**

Submitted on the briefs:[*]

Edwin Stanton Wall, Salt Lake City, Utah, for Defendant-Appellant.

Stephen J. Sorenson, Acting United States Attorney and Elizabethanne C. Stevens, Assistant United States Attorney, District of Utah, Salt Lake City, Utah, for Plaintiff-Appellee.

---

    [*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(g). The cause is therefore ordered submitted without oral argument.

Before **KELLY**, **ALARCÓN**,[**] and **HENRY**, Circuit Judges.

_____

**ALARCÓN**, Circuit Judge.

_____

Jesus Salvador Zepeda-Lopez appeals from his conviction of conspiracy to distribute 500 grams or more of methamphetamine in violations of 21 U.S.C. § 846. The only issue before us in this appeal is whether the District Court abused its discretion in admitting evidence that connected Mr. Zepeda-Lopez to the conspiracy. The Government and Mr. Zepeda-Lopez's defense counsel stipulated in the presence of the jury that Dean Ramirez, Genaro Galaz-Felix, Carlos Galaz-Felix, Julio Cesar Lopez, Israel Gomez-Astorga, Norma Garcia, Jose Vasquez, Ruben Sanchez, and other individuals were members of a conspiracy to distribute methamphetamine between January 8, 2003 and April 27, 2003.

During his opening statement, Mr. Zepeda-Lopez's counsel stated: "[T]he decision that you're going to have to focus on is whether or not Jesus Salvador Zepeda-Lopez, also known as Cacho, agreed, did knowingly intentionally conspire, confederate and agreed with these other folks, or at least one of them, to participate in this conspiracy. That's the focus of this case. That's the decision that you will be needing [sic] to make."

We affirm because we conclude that the District Court did not err in

_____

[**] The Honorable Arthur L. Alarcón, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

determining that, as a matter of law, the audio and video tapes containing Mr. Zepeda-Lopez's voice and image were admissible under Rule 901(a) of the Federal Rules of Evidence. We also agree with the District Court that Federal Bureau of Investigation Special Agent John Barrett's ("Agent Barrett") lay opinion that Mr. Zepeda-Lopez was the person whose voice was on the audio tape and his image was depicted on the video tape was admissible as part of the Government's case-in-chief under Rule 701 of the Federal Rules of Evidence to help the jury in determining whether the prosecution met its burden of proving beyond a reasonable doubt that Mr. Zepeda-Lopez was guilty of being a member of the conspiracy.

## I

Agent John Barrett was the only prosecution witness called by the prosecution. Because the parties stipulated to the existence of a conspiracy to distribute 500 grams or more of actual methamphetamine, his testimony was offered to prove that Mr. Zepeda-Lopez knowingly participated in it.

Agent Barrett testified that the Government wiretapped telephone conversations between Mr. Zepeda-Lopez, Dean Ramirez, and Jose Aparicio. The District Court admitted the audio tapes of six telephone calls over objection. The taped conversations were in Spanish. Agent Barrett listened to a majority of the conversations in the wiretap monitoring room. He identified Mr. Zepeda-Lopez's voice by using a "baseline call." Agent Barrett explained that a baseline

telephone call is one in which one of the parties to the call is identified by name. During one of the telephone conversations, the caller identified himself as "Cacho." Mr. Zepeda-Lopez admitted during his testimony at trial that he was known as "Cacho." He also admitted that his voice was on three of the taped telephone calls, including the baseline call. As to the remaining three telephone audio tapes, Mr. Zepeda-Lopez denied that his voice was on one of them. He did not deny that his voice was on another audio tape. He was not questioned whether his voice was on the remaining audio tape.

Agent Barrett testified that once there was a baseline call, subsequent calls were compared to identify the voices. Agent Barrett stated, "I have limited knowledge of Spanish, and I'm not a native speaker. I do not speak Spanish." Agent Barrett further testified, however, that

> [i]t does not matter what the language is. If you hear the same word, no matter what language, you're going to pick up on that specific word and you're going to be able to tell how differently it's said by different people. So I really don't think that the language is necessary to know that, no.

Agent Barrett also testified that he heard Mr. Zepeda-Lopez speak in court three days before the trial began.

Mr. Zepeda-Lopez's attorney objected to the admission of the audio tapes and Agent Barrett's testimony that it was his opinion that Mr. Zepeda-Lopez was a party to the taped telephone calls. The District Court overruled the objection.

- 4 -

Instead, it gave the jury the following cautionary instruction:

> Special agent Barrett will tell you whom he believes the various speakers are. But you're going to be listening to the tapes and see if one voice is the same on the other. It's entirely up to you to decide whether you agree with him or not, okay? That's your decision.

Part of the Government's evidence, submitted to establish that Mr. Zepeda-Lopez knowingly agreed to participate in committing the offense, involved three events. A telephone call recorded on April 10, 2003, contained a colloquy where an individual stated, "Uh... Don't forget the poor people. Uh... I need some lemon popsicles." A second individual replied, "Alright." Agent Barrett testified that Mr. Zepeda-Lopez and Dean Ramirez participated in this phone call. Agent Barrett identified Mr. Zepeda-Lopez as the first speaker, and testified that the term "lemon popsicles" refers to "some type of illegal drug."

In a telephone call taped on April 13, 2003, the parties discussed what to do with the "work" that was located at Mr. Ramirez's auto body shop:

> What do we do with that work? What do we do? I'll do that for you. But what do we do? Or what's going on? This guy is very agitated. He's very...
>
> . . .
>
> Where's the work?
>
> Huh?
>
> The work.
>
> It's there.

The errand.

It's in the <u>Shadow</u>.[1]

Look.

Huh.

Back in there.

Yeah.

Back in there, near the tires...

Yeah.

Make a hole there.

<u>Yeah.</u>

You know, those things for the water.

Uh...

. . .

Look, look, there . . . look. Back behind the shop...

<u>Yeah.</u>

Look. There...there...where...where the boxes for the <u>switches</u> are... for the lights.

<u>Yeah.</u> Here in the <u>shop</u>?

Yes. Uh... You know how I have some wide tires over there, at one of the back walls?

---

[1] The underlining in the transcript indicates that the word was spoken in English.

Yeah. Yeah.

Up there, there is one of those...of water, right?

Yeah. There's a...a...a... rubber kit, yeah. For the water.
Yeah.

Okay. Put...put the work in there and then...and then...put
it in, where I told you.

In the tires or... or in the... or in the water?

In the water.

But there are too many!

They'll fit in there.

It won't fit, my friend. There are... there are... there are
like ten (10) or eleven (11) packages.

Then, make...make a well there.

But it's day time.

It doesn't matter. There's no one there, Cacho.

But there's people back there.

Mhm. Alright. I'll go over. I'll see what we do.

Alright.

Agent Barrett identified Mr. Zepeda-Lopez as the first speaker and Mr. Ramirez as

the second. Agent Barrett testified that the term "work," as used in this

conversation, referred to illegal drugs.

The Government introduced a video tape that was recorded on the same day

- 7 -

as the April 13, 2003 telephone call by a pole camera positioned outside of Mr. Ramirez's auto body shop. It shows an individual extracting a toolbox out of the trunk of a Dodge Shadow. Agent Barrett testified that the individual depicted in the video tape retrieving the toolbox was Mr. Zepeda-Lopez. The toolbox held the ten to eleven packages of methamphetamine. Later, the video tape shows the toolbox being picked up by Norma Garcia and Santos Ramirez, Dean Ramirez's son.

Agent Barrett identified Mr. Zepeda-Lopez's image on the video tape. The Dodge Shadow is depicted on the video tape as it arrived at the shop. Agent Barrett identified the driver as Carlos Armando Galaz-Felix, and the passenger as Mr. Zepeda-Lopez. During cross-examination, Mr. Zepeda-Lopez's attorney asked Agent Barrett, "[t]his shows Cacho and Topo arriving, correct?" Agent Barrett responded, "It does." During his opening statement, Mr. Zepeda-Lopez's attorney admitted that the person wearing a striped shirt depicted on the video tape was Mr. Zepeda-Lopez.

Mr. Zepeda-Lopez's defense counsel was permitted to conduct a voir dire examination of Agent Barrett to determine whether any law enforcement officers conducted a visual surveillance of the shop at the time in question. Agent Barrett responded that no officer conducted a visual surveillance.

During direct examination, the prosecutor asked Agent Barrett if there were any features which he used to identify the individual on the videotape as Mr.

Zepeda-Lopez.  He replied: "Yes.  Dark pants, dark shoes, dark, short hair.  It appears from the -- as the video actually runs.  Once again, fair skin.  Except for the change in the shirt, I'd say it was the defendant."  Defense counsel requested permission to conduct an additional voir dire examination.  The District Court denied the request.  It stated: "Well, I think that -- no.  But what I'm going to tell the jury is that ultimately is [sic] your decision whether it is or is not."

Mr. Zepeda-Lopez testified in his defense.  He denied that he was a knowing participant in the drug conspiracy.  He testified that prior to March 2003, he worked in Mexico and "fixed up houses[.]"  Mr. Zepeda-Lopez stated that he met Mr. Ramirez in Tijuana, Mexico.

> A.   I met him on the streets.  There's a street where there are many workers asking for work, and that's how I met him.
>
> . . .
>
> Q.   And then did he ask you to come work at his house in Utah?
>
> A.   Yes.  Yes.  I met him approximately a year before.

He testified that he originally went to Mr. Ramirez's home in March 2003 because he "was putting the finishing touches in Dean Ramirez's house and Norma Garcia's house . . . I'm talking about the molding, the finishing touches.  I took care of the molding, the sheet rock and there is this paste that I use for sheet rock."  During the time he was in Utah, Mr. Zepeda-Lopez lived in a trailer behind Mr.

Ramirez's auto body shop.

Mr. Zepeda-Lopez admitted during his testimony that he was known as "Cacho." He also admitted that his voice was on three of the taped telephone calls, including the baseline call.

Mr. Zepeda-Lopez testified that in the April 13, 2003 telephone conversation, he believed that Mr. Ramirez was referring to tools, and not "something illegal." He testified as follows:

> Q. When you were talking to him about these -- about putting something back there, he makes a reference, as we've seen, to packages.
>
> A. Yes, about some tools, packages.
>
> Q. Well, now, you make the statement that there are 10 to 11 packages, correct?
>
> A. Yes, counsel.
>
> Q. Why did you make that statement?
>
> A. Well, because I think that on that day I think that I was working at his house -- in his house.
>
> . . .
>
> Q. And with regard to this discussion, when he started talking to you about moving this tool box, why did you tell him that you couldn't dig this hole?
>
> A. Well, in the first place the box was big and had a lock. And I told him that they didn't fit. But I never knew the amount of the packages. I told him just like that because out of curiosity.

Mr. Zepeda-Lopez further testified that he suspected Mr. Ramirez was involved in something illegal and that Mr. Ramirez "tricked" him. He explained his suspicions as follows:

> Q. Did you have a concern about what was in the tool box?
>
> A. Mentally I had some calculations. I thought, "Well, put away, kneel down, hide." I thought that it was something illegal. I didn't know exactly what kind of illegal stuff it was. He just tricked me. I thought there were --there was a package of tools in there.

Mr. Zepeda-Lopez testified that after he was stopped for a traffic violation and arrested in Utah, that he "suspected or [] believed that there was something wrong with [Mr. Ramirez], but I never knew anything." When asked if he told Mr. Ramirez and Ms. Garcia that he wanted to leave, he responded "Yes."

The jury found Mr. Zepeda-Lopez guilty of conspiracy to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846. He has timely appealed from the judgment.

## II

Mr. Zepeda-Lopez challenges the admission of the audio and the video tapes on the ground that Agent Barrett's identification of Mr. Zepeda-Lopez's voice and appearance was not supported by evidence that satisfies the requirements of Rule 901(a) of the Federal Rules of Evidence. He also contends that the District Court violated Rule 701 of the Federal Rules of Evidence in permitting Agent Barrett to

give his opinion as a lay witness because he lacked personal knowledge of Mr. Zepeda-Lopez's voice and appearance. He further contends that the jury was in as good a position as Agent Barrett to identify Mr. Zepeda-Lopez's voice on the audio tape and his image on the video tape.

"A district court has broad discretion to determine the admissibility of evidence, and we review the district court's ruling for abuse of discretion[.]" *United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006) (internal citations omitted). "Pursuant to the abuse of discretion standard, we will not reverse the district court without a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Griffin*, 389 F.3d 1100, 1103 (10th Cir. 2004) (internal quotation marks omitted). "Although the abuse of discretion standard is deferential, abuse is shown where the decision was made based upon a mistaken view of the law." *United States v. Allen*, 449 F.3d 1121, 1125 (10th Cir. 2006).

**A**

Rule 901(a) of the Federal Rules of Evidence provides that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." "The admissibility of a taped conversation rests within the sound discretion of the trial judge." *United States v. Buzzard*, 540 F.2d 1383, 1386 (10th Cir. 1976). Rule 104(a) of the Federal Rules

- 12 -

of Evidence provides that "[p]reliminary questions concerning . . . the admissibility of evidence shall be determined by the court[.]"  The hearings on the admissibility of the audio and video tapes were conducted in the presence of the jury.  Rule 104(c) provides that hearings that do not involve admissibility of a confession shall be conducted outside the presence of the jury "when the interests of justice require, or when an accused is a witness and so requests."  Mr. Zepeda-Lopez did not request that the hearings on admissibility of the tapes or Agent Barrett's lay opinion be conducted out of the presence of the jury.

Mr. Zepeda-Lopez contends that Agent Barrett's identification of the voice on the audio tapes is inadmissible under Rule 901(a) "[b]ecause [Agent Barrett] does not speak Spanish [] [and, therefore,] was unable to make any language based comparisons, such as the correct use of language, use of idioms, or inflection." Brief of Defendant-Appellant at 13.  He also argues that Agent Barrett's testimony was inadmissible because the tapes were never submitted to the FBI for voice print identification.  Mr. Zepeda-Lopez has failed to cite any authority that supports these asserted foundational deficiencies.

This Court has held that a single telephone call, combined with hearing a voice in court, is sufficient for voice identification testimony to go to the jury. *United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir. 1979).  "Such voice identification need only rise to the level of minimal familiarity." *United States v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005).  While it is true that Mr. Zepeda-Lopez

spoke in Spanish, Agent Barrett identified Mr. Zepeda-Lopez's voice on a total of six recordings admitted into evidence, including a call in which Mr. Zepeda-Lopez identified himself by his nickname "Cacho." This self-identification created a baseline call to which Agent Barrett could compare subsequent recordings. Agent Barrett also testified that he heard Mr. Zepeda-Lopez speak in court a few days before trial began. This perception confirmed his identification of his voice on the telephone recordings. Mr. Zepeda-Lopez's arguments go to the weight, not the admissibility of the voice identification. *See Axselle*, 604 F.2d at 1338 (holding that the defendant's arguments that a witness's voice identification testimony was deficient because the witness was not an expert in voice identification, the defendant's voice held no peculiar characteristics, and the witness had only heard the defendant's voice one time outside of the telephone conversation, go to the weight of the evidence).

The District Court did not abuse its discretion in ruling that the admission of the audio tapes was supported by sufficient evidence to satisfy the foundational requirements of Rule 901(a).

**B**

Mr. Zepeda-Lopez also maintains that the District Court abused its discretion in instructing the jury that it could consider Agent Barrett's testimony in determining whether Mr. Zepeda-Lopez was a knowing participant in the conspiracy. He argues that Agent Barrett's identification of Mr. Zepeda-Lopez's

voice and image was inadmissible under Rule 701 and Rule 901(a) of the Federal Rules of Evidence because the officer "lacked personal knowledge and had an inadequate basis to claim it was voice [sic] of Mr. Zepeda-Lopez in the calls or that he appeared in the video." Brief of Defendant-Appellant at 13.

The Government contends that we must apply the plain error standard of review because Mr. Zepeda-Lopez's trial counsel did not object to the identification of the defendant on the video tape at trial. Mr. Zepeda-Lopez asserts that he "raised the issue on appeal by timely oral objection to the . . . identification based upon a video, (Tr. p. 61)." Brief of Defendant-Appellant at 10.

During the playing of the video, the prosecutor asked Agent Barrett whether he knew who had access to Mr. Ramirez's shop. Page 61 of the trial transcript reveals that Mr. Zepeda-Lopez's counsel objected to the question and requested the opportunity to conduct a voir dire examination. The District Court granted the request to conduct a voir dire examination.

In an apparent attempt to demonstrate that Agent Barrett was not present to observe the events and persons depicted in the video tape, Mr. Zepeda-Lopez's counsel asked Agent Barrett whether he or any other officer personally conducted "a surveillance of who came in or came out of the shop . . .[.]" Agent Barrett replied: "At this point in time, no, sir." Agent Barrett also testified that the pole camera was capable of taking pictures of persons going in or out of the shop when it was dark with ambient light.

- 15 -

When the defense counsel completed his voir dire examination, he stated: "That's all I have." The Court replied: "All right." The District Court did not rule on the pending objection. Agent Barrett proceeded to identify the persons depicted on the video tape.

At a later point in the proceedings, Mr. Zepeda-Lopez's attorney again tried to persuade the trial court, through a voir dire examination, that the video tape and Agent Barrett's testimony that Mr. Zepeda-Lopez was depicted on it was inadmissible under Rule 701 and Rule 901(a), because Agent Barrett did not personally conduct a surveillance of the street in front of the auto shop while the pole camera was photographing that area.

The record reflects the following proceedings:

> Q. (BY MR. KENNEDY) From the images that we just saw the last couple of seconds around time index 1720:46, are you able to discern any features that would help you identify that individual?
>
> A. Yes. Dark prints, dark shoes, short hair. It appears from the -- as the video actually runs. Once again, fair skin. Except for the change in the shirt, I'd say it was the defendant.
>
> Mr. Wall: Your honor, may I voir dire?
>
> The Court: Well, I think that – no. But what I'm going to tell the jury is that ultimately [it] is your decision whether it is or is not.

Mr. Zepeda-Lopez's counsel did not expressly object to the admission of the video tape. The trial court's denial of the defense's request to conduct a voir dire

examination deprived counsel of the opportunity to attempt to present evidence to support an objection to the identification of Mr. Zepeda-Lopez's image.

Ordinarily, we will not consider whether a trial court abused its discretion in admitting evidence if the appellant failed to interpose a contemporaneous objection.

> There are basic reasons for the rule. Unless a party is required to timely object before the trial court, the trial judge and opposing counsel are deprived of any opportunity to take corrective action, if such be required, in order to assure an orderly, fair and proper trial. Further an aggrieved party must present his objection with clarity and specificity to the trial court in order to avoid unnecessary error from occurring. In sum, a party may not sit idly by at trial watching error being committed, and complain for the first time on appeal.

*United States v. Mitchell*, 783 F.2d 971, 976 (10th Cir. 1986) (quoting *United States v. Hubbard*, 603, F.2d 137, 142 (10th Cir. 1979)).

Mr. Zepeda-Lopez's counsel did not sit idly by at trial without alerting the trial court that admitting the video tape and Agent Barrett's identification of the defendant was error. The trial court was made fully aware of Mr. Zepeda-Lopez's theory that an identification cannot be made from viewing a monitor showing photographs taken by a motion picture camera, and a video tape thereof, if the officer did not personally observe the individual as he or she was being photographed. While the District Court did not expressly rule on the admissibility of Agent Barrett's lay opinion, it did so implicitly by instructing the jury that it could consider the weight of his testimony in determining whether Mr. Zepeda-

Lopez was a member of the conspiracy.

Under the circumstances reflected in this record, we hold that Mr. Zepeda-Lopez's counsel substantially complied with the requirement that an issue must be preserved in the trial court in order to seek review of it on appeal. The record shows that he objected to the admission of the video tape, but the trial court failed to rule on it. He was denied the opportunity to attempt to demonstrate by means of a voir dire examination that the evidence was inadmissible. We also conclude, however, that the District Court did not abuse its discretion in admitting Agent Barrett's identification of the image on the video tape of Mr. Zepeda-Lopez. His identification was corroborated by the fact that he observed the defendant in court before his testimony. *Cf. Axselle*, 604 F.2d at 1338 (concluding that a single telephone call, combined with hearing a voice in court, is sufficient for voice identification testimony to go to the jury).

## C

Mr. Zepeda-Lopez further maintains that the District Court abused its discretion in admitting Agent Barrett's lay opinion testimony that Mr. Zepeda-Lopez's voice is on the audio tape and that his image appears in the video tape. He argues that the officer's opinion testimony invaded the province of the jury and was inadmissible under Rule 701(b) because "the jury was in as good a position as Officer Barrett to identify whether Mr. Zepeda-Lopez's voice was that recorded in the telephone conversations as well as whether it was Mr. Zepeda-Lopez appearing

in the pole camera video." Brief of Defendant-Appellant at 13-14. To be admissible under Rule 701(b), a witness's testimony in the form of an opinion must be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue . . . ." Fed. R. Evid. 701(b).

This Court rejected a similar challenge under Rule 701(b) in *Bush*. 405 F.3d at 917-18. In *Bush*, a law enforcement officer testified during the Government's case-in-chief that the defendant's voice was on recorded telephone conversations. *Id*. at 912-15. This Court rejected the appellant's contention that the officer's lay opinion failed the helpfulness test because the jury heard audio recordings of the taped conversations. *Id*. at 917. In *Bush*, the record showed that the officer had conducted face-to-face conversations with the defendant on at least three occasions. *Id*. at 918. At the time of the officer's testimony, the jury had not heard the defendant's voice.

Because the defendant did not take the stand in *Bush*, the jury did not have the opportunity to compare his voice with the one in the audio recording. In this matter, Agent Barrett's opinion testimony was offered during the Government's case-in-chief to meet its burden of persuading the jury beyond a reasonable doubt of Mr. Zepeda-Lopez's complicity in the conspiracy. The prosecution and the trial court were not informed that Mr. Zepeda-Lopez would testify until after the Government rested and the defendant's motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure was denied.

While the jury was able to see Mr. Zepeda-Lopez in court throughout the trial and during his testimony, the trial court did not abuse its discretion in admitting Agent Barrett's opinion testimony that Mr. Zepeda-Lopez was the person depicted on the video tape. Agent Barrett testified that he had looked at the video "many times" in forming his opinion that Mr. Zepeda-Lopez's image appeared on it. The record reflects that during a voir dire examination, defense counsel asked Agent Barrett if he had "looked at this video many times[.]" Agent Barrett responded, "Yes[.]" The jury did not have the same opportunity to do so. Thus, Agent Barrett's testimony was helpful to it in deciding whether Mr. Zepeda-Lopez appeared on the portion of the video tape played before the jury.

The District Court correctly admonished the jury that it must determine the weight it should give Agent Barrett's testimony. It instructed the jury as follows:

> Now, I have said that you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.
>
> I have already indicated that you are the sole judges of the credibility or "believability" of each witness and the weight to be given to their testimony. In weighing the testimony of the witnesses you should consider their relationship to the government or the defendant; their interest, if any, in the outcome of the case; their manner of testifying; their opportunity to observe or acquire knowledge concerning the facts about which they testified; their candor, fairness and intelligence; and the extent to which they have been supported or contradicted by other credible evidence. You may, in short, accept or reject the testimony of any witness in whole or in part.

The District Court did not abuse its discretion in admitting Agent Barrett's lay opinion testimony.

AFFIRMED.