**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 26, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

  Plaintiff-Appellee,

v.

JOHN THOMAS WATTERS,

  Defendant-Appellant.

No. 06-5115

(D.C. No. CR-05-70-E)
(N. D. Oklahoma)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE, HOLLOWAY,** and **O'BRIEN**, Circuit Judges.

  John Watters (Watters) appeals his conviction for conspiracy to possess with intent

to distribute 1,000 or more marijuana plants, 21 U.S.C. § 846, possession with the intent

to distribute 1,000 or more marijuana plants, 21 U.S.C. §§ 841(a)(1) and

841(b)(1)(A)(vii), maintaining a drug-involved premises, 21 U.S.C. §§ 856(a)(2) and

856(b), and being a felon in possession of a firearm, 18 U.S.C. §§ 922(g)(1) and

924(a)(2). Watters contends the evidence presented to the jury was insufficient to support

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

his convictions, and that his convictions were further undercut by multiple evidentiary errors. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

I.

On November 14, 2003, agents of the Oklahoma Bureau of Narcotics executed a search warrant on an eight to ten acre property in Osage County, Oklahoma, which had been purchased by Watters in 1997 and included a residence and two barns. Watters built the second barn (Barn 2) in 1997; this barn had no windows and a large air vent mounted on a side wall. Agents first became suspicious of this property when a private citizen informed Agent Bryant Knox (Agent Knox) that Jerry Harris[1] (Harris) and Michelle Quisenberry[2] (Quisenberry) were growing marijuana on a property north of Tulsa, Oklahoma. After locating the property where the suspected grow was occurring, agents determined that Watters owned the property by reviewing records at the county assessor's office.

When agents entered the property while executing their search warrant, the door to Barn 2 was locked. Once inside Barn 2, agents discovered another structure built within the barn that was comprised of three rooms and contained approximately 906 marijuana plants, special lighting that could rotate 360 degrees, fluorescent lighting, fertilizer, lighting timers, an air conditioning unit on a timer, a pallet of bags of potting soil, and

---

[1] Harris was charged as a co-defendant, but fled to Mexico and has not returned.

[2] Quisenberry was charged in state court with growing marijuana, but the state court charges were dropped.

garbage bags containing dried plant stalks. The other barn (Barn 1) on the property contained no marijuana.

Agents searched the residence on the property and found approximately 230 marijuana plants in the basement, as well as fertilizer, grow lights, and watering hoses. In the closet of a guest bedroom, agents found several shotguns, a semi-automatic rifle, and a revolver, as well as hundreds of rounds of ammunition of various gauges and calibers. In the master bedroom closet, agents found three handguns and a shotgun, and five other guns, including a semi-automatic pistol, a revolver, and several shotguns. In the kitchen, agents found three triple-beam scales.

The agents did not find anyone in the residence when it was searched, although they found various items in the house that connected Watters to the residence, including photographs of Watters, telephone and electrical bills in his name, a ledger for the electricity used on the property in Watters' handwriting, correspondence between Watters and his stepson that discussed hydroponics (the study of growing plants in liquid), and Grenadier cigars, which Quisenberry testified Watters smoked. In Barn 1, the agents found business records for Quality Auto Collision in Watauga, Texas, which at one time had been owned by Watters' current wife, Annis, and managed by Watters. Although fingerprint identification was attempted of prints found in the basement and in Barn 2, these attempts were unsuccessful. No identifiable fingerprints were recovered from the firearms found in the house.

Prior to searching the property, agents had set up a video surveillance system

directed toward Barn 2. At trial, Quisenberry and Watters' ex-wife, Tricia Easton (Easton), identified Watters as the person seen in the video surveillance. On one occasion, the video showed a white male and a white Ford pickup truck with a camper shell near Barn 1. Agent Knox learned during his investigation that Watters owned a white Ford pickup truck with a camper shell and Watters admitted at trial that he owned a white Ford F-250 extended-cab truck with a camper shell. In another video from October of 2003, Agent Knox identified a person with white hair with a cigar in his mouth getting out of the white Ford pickup truck and using a key to enter Barn 2. Agent Knox also identified a pickup truck on one of the tapes that was present on the day of the search. The truck was registered to Watters.

At Watters' trial, Quisenberry testified that from May of 2001 until November of 2003, she assisted Harris and Watters in the cultivation of marijuana on Watters' property. She claimed that Watters was at the property sometimes once a week, sometimes every day, depending on the work to be done. She identified Watters as the person appearing on the surveillance video and testified that he had an off-white pickup truck with a camper.

At trial, Watters asserted that he bought the searched property in 1997 and lived on the property for six months before leasing it to Kenneth Jones (Jones), who paid Watters cash each month for rent and utilities. Watters said the last time he saw Jones was in September of 2003 when he collected rent from him. However, Watters later claimed that Jones never showed up in September of 2003 to pay his rent. Watters' son, Gary Watters,

-4-

corroborated Watters' claim that he rented the property to Jones. Watters admitted that he traveled periodically to the property to receive propane deliveries or to meet Jones.

Watters testified that his son, Mark, moved several firearms, which had belonged to Annis' ex-husband, from Texas to the property in Oklahoma in 2000. This was allegedly done because Watters could not be around firearms due to his prior felony convictions. Watters stated that he believed the seized firearms were the same guns Mark moved from Texas to Oklahoma. Danny Dobson (Dobson), a witness for Watters, claimed that he helped Mark move guns from Annis' apartment in Texas shortly after she married Watters in 2000, but did not know where Mark had taken the firearms.

## II.

Watters contends (1) that there was insufficient evidence to support his firearm conviction; (2) the government engaged in prosecutorial misconduct in questioning him about contacting an attorney; (3) the district court abused its discretion in admitting correspondence between Watters and his stepson; (4) the district court committed plain error in admitting testimony identifying Watters on surveillance video; and (5) the district court abused its discretion in allowing the government to impeach Watters regarding prior convictions. Upon review of these contentions, we find no error.

*A. Firearm conviction/sufficiency of evidence/constructive possession.*

The jury convicted Watters of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). To establish a violation of § 922(g)(1), the

-5-

government must prove beyond a reasonable doubt that: (1) the defendant was previously convicted of a felony; (2) the defendant knowingly possessed a firearm or ammunition; and (3) possession was in, or the possession affected, interstate commerce. United States v. Ledford, 443 F.3d 702, 713 (10th Cir. 2005), cert. denied, 127 S. Ct. 165 (2006). Watters contests only the second element. He argues that the evidence at trial was insufficient to show that he possessed the firearms seized from the property.

"Sufficiency of the evidence to support a jury's verdict is a legal issue that is reviewed de novo." United States v. Norman, 388 F.3d 1337, 1340 (10th Cir. 2004). "In order to conclude that the evidence was insufficient as a matter of law, [the court] must view the evidence and reasonable inferences therefrom in the light most favorable to the government and then determine that no rational jury could have found Defendant guilty beyond a reasonable doubt." Id. (quoting United States v. Heckard, 238 F.3d 1222, 1228 (10th Cir. 2001)). This court should not "question the jury's credibility determinations or its conclusions about the weight of the evidence." Id. (citations omitted).

Watters argues that the government's evidence regarding the firearms was at best speculative. He points out that no witness at trial placed him in either bedroom where the firearms were found, he did not live in the house, the documents linking him to the house were stale, and Quisenberry was the only witness who ever placed him inside the house and she was testifying pursuant to a favorable plea agreement with the government.

Possession under § 922(g)(1) may be either actual or constructive. Ledford, 443 F.3d at 713. "Generally, an individual has constructive possession over an object when he

-6-

or she knowingly has ownership, dominion, or control over the object and the premises where it is found." Id. "In most cases, dominion, control, and knowledge may be inferred where a defendant has exclusive possession of the premises; however, 'joint occupancy alone cannot sustain such an inference.'" Id. (quoting United States v. Mills, 29 F.3d 545, 549 (10th Cir. 1994)).

In a case involving joint occupancy "where the government seeks to prove constructive possession by circumstantial evidence, it must present evidence to show some connection or nexus between the defendant and the firearm or other contraband." Ledford, 443 F.3d at 713. "While caution must be taken that the conviction not be obtained by piling inference on inference, an inference of constructive possession is reasonable if the conclusion flows from logical and probalistic reasoning." Id. at 713-14 (citations omitted). "To sustain a conviction for constructive possession, the government must present 'evidence supporting at least a plausible inference that the defendant had knowledge of and access to the weapon.'" Id. at 714 (quoting United States v. Hien Van Tieu, 279 F.3d 917, 922 (10th Cir. 2002)).

We conclude there was sufficient evidence presented at trial to demonstrate Watters' constructive possession of the firearms. Quisenberry testified that Watters sometimes lived in Texas and sometimes lived at the residence on the Oklahoma property. Watters claimed that he did not live at the residence, but had leased it to Jones. If the jury believed Quisenberry's testimony and disbelieved Watters' testimony, then Watters, as the sole occupant of the residence (even if only on a part-time basis) could be

inferred to have dominion or control over the firearms. See Ledford, 443 F.3d at 713

(noting that in most cases, dominion, control, and knowledge may be inferred when a

defendant has exclusive possession of the premises).

Even if the jury believed that Jones also lived on the property, there was sufficient

circumstantial evidence at trial to "support[   ] at least a plausible inference that the

defendant had knowledge of and access to the weapon." Id. at 714 (emphasis added).

First, Watters admitted that his son, Mark, moved the firearms to the searched property,

indicating that he knew there were firearms at the residence in Oklahoma. Second, the

government provided sufficient evidence that Watters had access to these firearms.[3]

Quisenberry and Easton identified Watters as the person appearing on the surveillance

videos recorded on the property. Further, Long, the propane deliveryman, testified that

Watters was present on the property and met him when he delivered propane.

Quisenberry also testified that Watters went inside the residence when they cultivated the

marijuana plants in the basement of the house. Taking the evidence in the light most

favorable to the government, we conclude that there was sufficient evidence to sustain

---

[3] Tenth Circuit precedent requires only knowledge and access. It does not require an intent to exercise dominion or control. "Under Tenth Circuit precedent, where the defendant in a joint occupancy situation has knowledge of and access to the weapons, there is a sufficient nexus to infer dominion or control. It is not necessary to show that the defendant actually owned the weapons - mere possession is enough." Ledford, 443 F.3d at 714 (citing United States v. Colonna, 360 F.3d 1169, 1179 (10th Cir. 2004)). Therefore, it does not matter that the guns may have belonged to Annis, rather than Watters, because there was sufficient evidence that he had both knowledge of and access to them.

Watters' firearm conviction.

B.  *Questioning Watters regarding attorney contact and pre-arrest silence.*

Watters argues that the government committed prosecutorial misconduct when it questioned him about contacting an attorney before contacting the police after he learned a search warrant had been executed on his property.  He alleges that the government's line of questioning at trial "left the distinct impression that consulting a lawyer under such circumstances was an admission of guilt" and implicated his Fifth Amendment right to silence and his due process rights.  Appellant Brief at 22.  The government contends that it was entitled to question Watters about his pre-arrest silence because Watters asserted Jones' occupation of the property as a defense and therefore, the questions were proper impeachment regarding his credibility and the actions he took prior to his arrest.

Because Watters did not raise this issue before the district court, we will review it for plain error.  To establish plain error, Watters "must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights."  United States v. Dazey, 403 F.3d 1147, 1174 (10th Cir. 2005).  "If all these conditions are met, a court reviewing the error may exercise discretion to correct it if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id.  "We conduct this analysis 'less rigidly when reviewing a potential constitutional error.'"  Id. (citing United States v. James, 257 F.3d 1173, 1182 (10th Cir. 2001)).

"It is well-established that a prosecutor may use a defendant's pre-arrest silence to

impeach the defendant's credibility." United States v. Chimal, 976 F.2d 608, 611 (10th Cir. 1992) (citing Jenkins v. Anderson, 447 U.S. 231, 238, 240 (1980) (holding that impeachment by use of pre-arrest silence does not violate Fifth or Fourteenth Amendments)).  In the present case, the prosecutor questioned Watters about his delay in informing the police about Jones living on the premises to impeach his credibility.  Because this line of questioning did not violate Watters' Fifth or Fourteenth Amendment rights, Watters' argument fails.

*C. Admission of correspondence.*

Watters argues that the district court abused its discretion in admitting correspondence between Watters and his stepson that was found at the Oklahoma residence.  These letters discussed hydroponics, going back into business, future plans, large sums of money, and included drawings of a barn similar to that found on Watters' property.  At trial, Watters' counsel argued that these letters were not relevant to the allegations raised at trial because the letters were hearsay and dated back to 1995.  The district court admitted these letters because they: (1) show that Watters had "sufficient control of the evidence to store old letters regarding hydroponic growing within that residence;" and (2) they "tie Mr. Watters in a meaningful way to the property and the uses to which that property was put."  Record on Appeal ("ROA") at 169-70.

This court reviews a district court's decision to admit evidence for abuse of discretion, and we will reverse only if we conclude the decision was "arbitrary, capricious, whimsical, or manifestly unreasonable."  United States v. Atencio, 435 F.3d

1222, 1235 (10th Cir. 2006), cert. denied, 126 S. Ct. 2310 (2006) (citations omitted). "Our review is even more deferential where the evidentiary ruling concerns the admissibility of what is claimed to be hearsay evidence." United States v. Pulido-Jacobo, 377 F.3d 1124, 1132 (10th Cir. 2004).

In the present case, the government needed to show that Watters had possession of the seized marijuana. Possession of a controlled substance may be actual or constructive. United States v. Harris, 369 F.3d 1157, 1163 (10th Cir. 2004). Constructive possession requires the government to show that the defendant "knowingly held ownership, dominion or control over the object and premises where the contraband was found." Id. The admitted letters were not hearsay, but were offered as evidence that Watters had sufficient control over the searched property to store correspondence there. See Pulido-Jacobo, 377 F.3d at 1132 (determining that receipt found in glove compartment of car was not admitted for truth, but to show sufficient control over car). In addition, these letters qualify as adoptive admissions under the "possession plus" standard, which permits admittance of evidence pursuant to Federal Rule of Evidence 801(d)(2)(B) in cases where "the surrounding circumstances tie the possessor and the document together in some meaningful way." Id. (citations omitted). Because the letters admitted at trial were addressed to "John," discussed growing crops, and depicted images of a barn similar to that found on Watters' property, they are tied in a meaningful way to Watters and the district court did not abuse its discretion in admitting them.

D. *Witness identification of Watters on videotape.*

-11-

Watters argues that the district court committed plain error when it allowed two witnesses at trial, Easton and Quisenberry, to identify him as the person appearing on surveillance videos recorded on the searched property. At trial, Watters' counsel did not object to the identifications of Watters on the videotape, so plain error review applies. See United States v. Zepeda-Lopez, 478 F.3d 1213, 1221 (10th Cir. 2007) (noting that party may not sit idly by at trial watching error and complain for first time on appeal). We conclude that the district court did not commit plain error in allowing the identifications.

Because the identifications of Watters on the surveillance videos by Easton and Quisenberry helped the jury to determine whether Watters was the man on the property in the videos, it was proper opinion evidence under Federal Rule of Evidence 701(b). Both Easton, as Watters' ex-wife, and Quisenberry, as a participant in the marijuana grow for over two years, were very familiar with Watters. Their prior experiences with him and their multiple pre-trial viewings of the surveillance tapes corroborate their in-court identifications of him as the person appearing on the video and support the authenticity of their identifications. See id. at 1221-22 (district court did not abuse its discretion in permitting in-court identification of defendant on videotape corroborated merely by agent's observance of defendant in court and multiple viewings of tape).

E. Impeachment of Watters with prior felonies.

Finally, Watters argues that the district court abused its discretion in permitting the government to impeach him with his two prior felony convictions. We review

-12-

evidentiary matters under an abuse of discretion standard. United States v. Wilson, 244 F.3d 1208, 1217 (10th Cir. 2001). In the present case, the government filed a timely notice of impeachment by evidence of prior convictions. On direct examination, Watters testified that he was convicted of only one felony. During cross examination, the government impeached Watters with the fact that he had two prior felony convictions, rather than one. The trial transcript indicates that the jury was not informed of the nature of either of these convictions and that defense counsel informed the judge, outside the presence of the jury, that she would be willing to stipulate that Watters had two felony convictions. "This court has long permitted the government to impeach the testimony of a criminal defendant who takes the witness stand in the same manner as any other witness, including reference to prior convictions." United States v. Haslip, 160 F.3d 649, 654 (10th Cir. 1998). The district court did not abuse its discretion in permitting the government to impeach Watters concerning his inaccurate account of his criminal record.

III.

We AFFIRM Watters' convictions and the rulings of the district court.

Entered for the Court

Mary Beck Briscoe
Circuit Judge