**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 22, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KEITH McDANIEL,

Defendant - Appellant.

No. 09-3273
(D.C. No. 2:07-CR-20168-JWL-22)
(D. Kan.)

---

**ORDER GRANTING PANEL REHEARING**

---

Before **O'BRIEN** and **SEYMOUR**, Circuit Judges.

---

Appellant, Mr. Keith McDaniel, petitioned for en banc or panel rehearing. We **GRANT** rehearing by the panel for the limited purpose of clarifying our analysis of the admissibility of intercepted phone calls introduced against Mr. McDaniel. We **VACATE** our May 24, 2011 Order and Judgment, and replace it with the order issued herewith.

Mr. McDaniel's petition for rehearing has been circulated to all of the judges of the court who are in regular active service as required by Fed. R. App. P. 35. As no member of the panel and no judge in regular active service on the

court requested that the court be polled, his request for rehearing en banc is

**DENIED**.[1]


ENTERED FOR THE COURT


PER CURIAM

---

[1]Additional petitions for rehearing in this matter will not be permitted. *See* 10th Cir. R. 40.3 ("The court will accept only one petition for rehearing from any party to an appeal. No motion to reconsider the court's ruling on a petition for rehearing may be filed.").

FILED
United States Court of Appeals
Tenth Circuit

September 22, 2011

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENT CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KEITH McDANIEL,

Defendant - Appellant.

No. 09-3273
(D.C. No. 2:07-CR-20168-JWL-22)
(D. Kan.)

---

ORDER AND JUDGMENT[*]

---

Before **O'BRIEN** and **SEYMOUR**, Circuit Judges.[**]

---

In 2008, defendant-appellant Keith McDaniel was charged, along with
twenty-three other individuals, with one count of conspiracy to manufacture,
possess with intent to distribute, and to distribute fifty grams or more of cocaine
base and to possess with intent to distribute and to distribute five kilograms or
more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii),
(b)(1)(A)(iii), 846, and 18 U.S.C. § 2.  At trial, the district court admitted into

---

[*]This order and judgment is not binding precedent except under the doctrines of
law of the case, res judicata and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[**]The Honorable Deanell Reece Tacha, who participated in the panel decision
regarding this appeal, retired from service to the court on June 1, 2011.  As a result, she
did not participate in the reissuance of this opinion.  The remaining two judges are in
agreement with respect to this disposition.  *See* 28 U.S.C. § 46(d).

evidence multiple recorded telephone conversations between the conspirators which investigating officers had intercepted through wiretaps. Seven of these conversations involved Mr. McDaniel. The jury ultimately found Mr. McDaniel guilty of conspiracy. On appeal, Mr. McDaniel contends that the district court erred in admitting the recorded conversations. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. McDaniel's conviction stems from his participation in a vast conspiracy to distribute cocaine and cocaine base in and around Kansas City, Kansas and Kansas City, Missouri from January 2006 to November 2007. The Drug Enforcement Administration began investigating the conspiracy in 2006 at the request of the Leavenworth, Kansas police department. After attempting various traditional investigative techniques (e.g., surveillance, confidential informants, and search warrants) and finding them to be ineffective means of uncovering the size and scope of the conspiracy, federal law enforcement officers decided to seek wiretaps. From August to October 2007, the officers applied for and obtained wiretaps on several suspected conspirators' phones. The conversations intercepted by the officers implicated Mr. McDaniel, and he was eventually arrested on February 4, 2008.

Prior to trial, several of Mr. McDaniel's co-defendants sought to suppress the wiretap evidence because of alleged deficiencies in the wiretap applications

and in the district judge's approval of those applications. Mr. McDaniel joined in two of the motions. The district court denied the motions on February 18, 2009, and Mr. McDaniel proceeded to trial along with seven of his co-defendants.

At trial, the government sought to introduce, through Officer Eric Jones, numerous recorded conversations the investigating officers had intercepted through the wiretaps. Prior to playing any of the conversations for the jury, Officer Jones testified as to his familiarity with the voices on the tapes. With respect to Mr. McDaniel, Officer Jones testified as follows:

> [OFFICER JONES]: I have spoken with Mr. McDaniel, as well as Mr. McDaniel, for instance, is one that we didn't positively identify until almost the end of our intercepts, and towards the end of the investigation we had an idea that it was him. We just didn't—we couldn't positively say initially that it was him until other aspects kind of came into play through surveillance and some other incidences later.
>
> [PROSECUTOR]: As a result of talking to him and conducting surveillance, you're able to identify phone calls associated or between [co-defendant] Monterial Wesley and Mr. McDaniel?
>
> [OFFICER JONES]: Yes.

Rec., vol. 5 at 189.

Immediately following this testimony, the prosecutor explained that she had presented her foundation for the recorded conversations and intended to play the tapes for the jury. The district court then invited any objections to the admission of the recordings, and Mr. McDaniel was among the defendants who objected. Specifically, Mr. McDaniel argued that Officer Jones had not established that he

was sufficiently familiar with Mr. McDaniel's voice to identify him as a speaker on any of the recordings. Following a brief discussion of the various defendants' objections, the district court conditionally admitted all of the recordings pursuant to Fed. R. Evid. 104. Officer Jones subsequently identified Mr. McDaniel's voice on seven different recordings containing incriminating conversations. Officer Jones also testified that the phone used by Mr. McDaniel in several of the seven calls was registered to Ms. Allicia Frazier, who is now married to Mr. McDaniel. Officer Jones estimated that there were over 160 phone calls recorded during the investigation that were attributed to Mr. McDaniel.

In addition to Officer Jones's voice identification testimony, Danny Tarrants testified that he and Mr. McDaniel had been friends since 2004 and that they had maintained consistent contact from 2004 to 2007. When the government stated its intent to have Mr. Tarrants identify Mr. McDaniel's voice on the recordings, Mr. McDaniel's counsel requested that the government be required to play a series of conversations, some involving Mr. McDaniel and some not involving Mr. McDaniel, in an effort to test Mr. Tarrants's ability to identify Mr. McDaniel's voice. The government agreed to this procedure and it proceeded to play three conversations for Mr. Tarrants, only one of which was a conversation that Officer Jones had identified as involving Mr. McDaniel. Consistent with Officer Jones's testimony, Mr. Tarrants identified Mr. McDaniel's voice on the one conversation attributed to Mr. McDaniel and did not identify Mr. McDaniel's

voice on the other two.

Finally, the government presented testimony from Agent Timothy McCue, one of the leading officers in the conspiracy investigation. Agent McCue testified that he had listened to "the majority, if not all, of [the intercepted] phone calls" during the course of the investigation. Rec., vol. 8 at 1431. He further stated that he had participated in the arrest of Mr. McDaniel and that he had a conversation with him at the time of the arrest. This conversation, Agent McCue testified, confirmed his belief that Mr. McDaniel was the speaker on the phone calls the officers had previously associated with him during the investigation. On cross-examination, Agent McCue expanded on the extent of his familiarity with Mr. McDaniel, stating that he transported Mr. McDaniel to jail following his arrest, spoke with Mr. McDaniel, and obtained biographical information from Mr. McDaniel.

After the government presented its witnesses and just before it concluded its case in chief, the district court made a formal, unconditional ruling on the record with respect to the admissibility of the recordings. The court held that "on each of the telephone calls in question . . . I do find that either by or in combination with the testimony of people who expressed familiarity with the voices and/or the circumstances of the phone calls sufficient foundation has been laid by the government to establish the authenticity of those calls." *Id.* at 1614. With respect to Mr. McDaniel specifically, the district court stated that "Mr.

Jones testified about his firsthand knowledge of Mr. McDaniel's voice, identified his voice on those calls, and Mr. McCue provided corroboration of that particular testimony. There's also some circumstantial evidence that ties those calls together as well." *Id.* at 1616.

The jury ultimately found Mr. McDaniel guilty of conspiracy, and he was sentenced to 360 months' imprisonment. This appeal followed.

## II. DISCUSSION

On appeal, Mr. McDaniel challenges only the admissibility of the recorded conversations. Specifically, he contends that the district court erred in admitting the conversations because: (1) the government witnesses failed to establish sufficient familiarity with Mr. McDaniel's voice to identify it on the recordings; and (2) the wiretap applications were deficient and the wiretaps were not necessary to the investigation.

A.    Voice Identification

We review a district court's decision to admit evidence for abuse of discretion. *United States v. Parker*, 551 F.3d 1167, 1171 (10th Cir. 2008). Under Fed. R. Evid. 901(b)(5), voice identification testimony is admissible when the witness has heard the voice "at any time under circumstances connecting it with the alleged speaker." We have repeatedly instructed that Rule 901 sets a low bar for admissibility, requiring only that the witness demonstrate "minimal familiarity" with the voice being identified. *See, e.g.*, *United States v. Bush*, 405

F.3d 909, 919 (10th Cir. 2005); *Parker*, 551 F.3d at 1172; *United States v. Zepeda-Lopez*, 478 F.3d 1213, 1219 (10th Cir. 2007). "Once minimal familiarity is satisfied, it is for the jury to assess any issues regarding the extent of the witness' familiarity with the voice." *Bush*, 405 F.3d at 919; *see also United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir. 1979).

Mr. McDaniel contends that Officer Jones's testimony was not specific enough to establish minimal familiarity because it is unclear when Officer Jones and Mr. McDaniel spoke, for how long they spoke, where they spoke, or how much Mr. McDaniel said during their conversation. Indeed, Mr. McDaniel asserts that "[f]or all that can be gleaned from Officer Jones's testimony, it may have been an entirely one-sided conversation, with Mr. McDaniel saying virtually nothing."

Rule 901 only requires that the witness have heard the voice "at any time under circumstances connecting it with the alleged speaker." Here, Officer Jones testified that he had "spoken with Mr. McDaniel," and through "surveillance and some other incidences later," he was able to identify Mr. McDaniel's voice on the recordings.[1] Rec., vol. 5 at 189. Similarly, Agent McCue established his

---

[1] Officer Jones testified that they had conducted surveillance of Ms. Frazier's house in an attempt to identify who was using the telephone that was later attributed to Mr. McDaniel. During cross-examination, he clarified that the surveillance of Ms. Frazier's house had been unsuccessful because no activity was observed there. We disagree, however, with Mr. McDaniel's claim that during cross-examination, Officer Jones "retracted" his statement that surveillance assisted in identifying Mr. McDaniel on the recordings. The so-called "retraction" was limited to the discussion of surveillance of

familiarity with Mr. McDaniel's voice by testifying that he had a conversation with Mr. McDaniel, had obtained biographical information from Mr. McDaniel, and had transported Mr. McDaniel to jail. Although these statements during trial are general in nature, the district court also had additional information about the investigation and the officers' familiarity with Mr. McDaniel's voice that was not available to the jury. Finally, further evidence including Mr. Tarrants's identification of Mr. McDaniel's voice on one of the calls corroborated the voice identification.

"The admissibility of a taped conversation rests within the sound discretion of the trial judge." *Zepeda-Lopez*, 478 F.3d at 1219 (internal quotation marks omitted). We are satisfied that the district court did not abuse its discretion in ruling that the admission of the intercepted calls was supported by sufficient evidence to satisfy Rule 901. Any remaining arguments questioning Officer Jones or Agent McCue's familiarity with Mr. McDaniel's voice go to the weight of the voice identification testimony, not its admissibility. *See Axselle*, 604 F.2d at 1338 (holding that a witness who testified that he had heard a defendant's voice "at one time other than during the call in question" had established minimal familiarity, and that defendant's arguments regarding the extent of the witness's familiarity "go to the weight of the evidence"); *see also Bush*, 405 F.3d at 919.

B. <u>Wiretaps</u>

---

Ms. Frazier's home.

Pursuant to Fed. R. App. P. 28(i), Mr. McDaniel adopts the arguments of his co-defendant, Shevel Foy, with respect to the legality of the wiretaps. Specifically, he contends that: (1) the officers failed to properly establish authorization in their wiretap applications; and (2) the affidavits in support of the wiretaps did not establish necessity. We adopt our analysis from *United States v. Foy*, 641 F.3d 455 (10th Cir. 2011), and affirm the district court's refusal to suppress the wiretap evidence for the reasons stated in that opinion.

### III. CONCLUSION

For the foregoing reasons, we **AFFIRM**.

ENTERED FOR THE COURT

PER CURIAM