UNITED STATES of America, Plaintiff-Appellee,

v.

Jerry AXSELLE, Defendant-Appellant.

No. 78–1213.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Jan. 26, 1979.

Decided Sept. 6, 1979.

**1332**

Paul M. Dent, Kansas City, Kan., for defendant-appellant.

Douglas B. Comer, Asst. U. S. Atty., Kansas City, Kan. (James P. Buchele, U. S. Atty., Topeka, Kan., on brief), for plaintiff-appellee.

Before HOLLOWAY, BARRETT and LOGAN, Circuit Judges.

HOLLOWAY, Circuit Judge.

Defendant-appellant Jerry Axselle was convicted on a jury verdict of conspiring to distribute a Schedule I non-narcotic controlled substance, marijuana, in violation of 21 U.S.C. Sec. 841(a)(1), 21 U.S.C. Sec. 846, and 18 U.S.C. Sec. 2. Defendant was sentenced to a term of imprisonment for three years and a special parole term of 2 years,[1] and he appeals. The issues raised on appeal require some review of the evidence.

**I**

*Outline of the evidence*

The Government's evidence tended to show that a co-defendant, Herbert Claiborne,[2] checked into a motel in Abilene, Kansas on March 31, 1977, after having his car towed to a local garage for repair work. While at the motel Claiborne received a telephone call from an unknown party. In connecting the call, the motel switchboard operator overheard the caller ask Claiborne whether he had let anyone near the trunk of Claiborne's car. Claiborne answered negatively and the caller began talking about the "stuff" they had, saying it was the "best stuff they had had for a long time," and that there was a lot of money involved. (III R. 33–34). The switchboard operator continued to listen to the conversation for some 3–5 minutes. (II R. 35, III R. 37). She heard the parties talk about Claiborne's car troubles and the fact that Claiborne told the repairman that he needed two new tires because "the county mounties hung around the gas station and he didn't want attention drawn to his car with the bad tires he had." (III R. 34).

The caller agreed to send money to Claiborne by Western Union to pay for the car repairs. After getting off the phone the operator, Mrs. Padgett, reported the conversation to Mr. Priem, the motel owner. Mr. Priem later relayed the information to Sheriff McKenney of Dickinson County, Kansas who did some investigating on his own and reported the information to the Drug Enforcement Administration (DEA). Mr. Bramwell of the DEA received the information from Sheriff McKenney and relayed it to Mr. Comer of the U. S. Attorney's Office, who obtained a search warrant for Claiborne's car.

A search pursuant to the warrant produced approximately 100 pounds of marijuana in the trunk of the car. (III R. 58). Defendant was linked to Claiborne by money orders sent by him to Claiborne in Abilene (III R. 51–52), and by a phone call made from Claiborne to defendant after Claiborne's arrest and agreement to cooperate

---

1. 21 U.S.C. Sec. 841(b)(1)(B) provides that a person who violates subsection (a) with respect to a non-narcotic Schedule I drug shall be sentenced to a term of imprisonment of "not more than 5 years, a fine of not more than $15,000, or both." Further, "[a]ny sentence imposing a term of imprisonment under this paragraph shall, in the absence of such a prior conviction, impose a special parole term of at least 2 years in addition to such term of imprisonment . . ."

2. Defendant Axselle and co-defendant Claiborne were tried separately (II R. 15) and the disposition of charges against Claiborne is not before us.

with the Government. (*Id.* at 93–96). This phone call was tape-recorded by the Government and the recording was used at trial.

Before trial defendant moved to suppress evidence of the phone call overheard by Mrs. Padgett, evidence obtained through the search warrant, and evidence, including the tape recording, of the telephone call made by Claiborne after his arrest. A pretrial hearing was held on the motion based on the first call overheard by the motel operator. By a written Memorandum and Order the court found the interception not unlawful and denied the motion. (I R. 7–15). The motion directed to the call made by Claiborne after his arrest was denied orally at trial, the court finding that there was consent by Claiborne to the recording of the call. (III R. 20–21).

Defendant's challenge to the rulings on suppression of evidence is his first argument for reversal.

## II

*The telephone call overheard by the motel switchboard operator*

The defendant argues that Mrs. Padgett, the switchboard operator at Priem's Motel, illegally intercepted the contents of the telephone call from the defendant to Mr. Claiborne who was staying at the motel. (Brief of Appellant 6–16). Defendant says that because the interception and disclosure of this conversation constitutes a violation of 47 U.S.C. Sec. 605[3] and 18 U.S.C. Sec. 2510 *et seq.*[4], the testimony should have been suppressed. The Government responds that Mrs. Padgett's conduct comes within exceptions to these statutes, that it was not a violation of the statute, and thus the evidence was admissible. (Brief of Appellee 11–18).

The trial court agreed with the Government and overruled the motion to suppress. (I R. 13–14). The court found that the interception was inadvertent as opposed to willful and that in fact it was not an interception as defined by the statutes since the conversation was overheard during the use of the switchboard in the ordinary course of the motel's business. (I R. 14).[5] The defendant vigorously challenges these findings.

Title 18 U.S.C. Sec. 2515 provides that contents of communications obtained in violation of Sec. 2511 and any evidence derived

---

**3.** While both the defendant and the Government, as well as the trial court, discussed 47 U.S.C. Sec. 605, the only applicable statute appears to be 18 U.S.C. Sec. 2510 *et seq.* In the legislative history of Sec. 2510 *et seq.* (1968) U.S.Code Cong. & Admin.News, pp. 2112, 2196, the 1968 amended version of 47 U.S.C. Sec. 605 was discussed:

This section is not intended merely to be a reenactment of section 605. The new provision is intended as a substitute. *The regulation of the interception of wire or oral communications in the future is to be governed by proposed new chapter 119 of title 18, United States Code.* . . . [*18 U.S.C. Sec. 2510 et seq.*]. (Emphasis added).

\* \* \* \* \* \*

The new section [47 U.S.C. Sec. 605] is designed to regulate the conduct of communications personnel.

*See United States v. Seidlitz*, 589 F.2d 152 (4th Cir.).

However, cases arising under 47 U.S.C. Sec. 605 will be discussed since it was the predecessor to 18 U.S.C. Sec. 2510 *et seq.*

**4.** 18 U.S.C. Sec. 2511 provides in part:

(1) Except as otherwise specifically provided in this chapter any person who

  (a) willfully intercepts, endeavors to intercept, or procures any other person to intercept, any wire or oral communication;

\* \* \* \* \* \*

shall be fined not more than $10,000 or imprisoned not more than five years, or both. 18 U.S.C. Sec. 2511(2)(c) provides that:

  (c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

These exceptions do not apply to the issue discussed in Part I but are involved in the issue discussed in Part IV, *infra*.

**5.** Since we sustain the trial court's finding that the operator's interception of the call was not willful, we need not consider whether there was in fact an interception as defined by 18 U.S.C. Secs. 2510(4) & (5). Nor need we discuss the similar exception provided by 18 U.S.C. Sec. 2511(2)(a)(i).

1334

therefrom cannot be received in evidence in any trial, hearing, or other court proceeding. Thus if the communication was obtained illegally its contents and all evidence derived from the telephone conversation must be suppressed. Our first inquiry must be whether the conversation is within the statute and whether Mrs. Padgett's conduct is prohibited by it.

The statute prohibits the interception of any wire or oral communication. The defendant characterizes the telephone conversation as a wire communication, (Brief of Appellant 7), while the Government describes it as an oral communication. (Brief of Appellee 12). The trial court characterized the conversation as an "electronic" communication. (I R. 14). While none of the parties focus on this point, it is important to correctly describe the communication since the rules imposed by the statute differ according to the type of communication involved.

Wire communications are defined in 18 U.S.C. Sec. 2510(1) as

> any communication made in whole or in part through the use of facilities for the transmission of communications by the aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the transmission of interstate or foreign communications.

An oral communication is defined in subsection (2) as

> . . . any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.

It seems apparent that the restrictions differ depending on how the communication is characterized. If it is a wire communication, it is protected absolutely from illegal interception. But only those oral communications which are made under circumstances justifying an exception that they are not subject to interception are protected. We feel it clear that the telephone communication in question here was a wire communication within the meaning of the Act. *United States v. Harpel*, 493 F.2d 346 (10th Cir.); *see United States v. Hall*, 488 F.2d 193 (9th Cir.).

The main question we face concerns the trial court's finding that the interception of the call was an inadvertent overhearing of a telephone conversation by the motel clerk and not unlawful inasmuch as the statute requires that an interception be willful to be a violation. (I R. 14). *See* 18 U.S.C. Sec. 2511(1)(a). The events were described by Mrs. Padgett's testimony at the suppression hearing. She said that when a call came in through the switchboard she had to stay on the line to make sure the call was completed, that otherwise the phone could ring indefinitely, and that it was part of her duties to see that the call was connected and put through to the room. (II R. 29). On the night of March 31, 1977, she had the opportunity to connect a call into Mr. Claiborne's room. She described the call in detail, telling how, after he picked up the call and she started to unplug, she heard a remark to Claiborne asking if he had "let anybody near that trunk," which was "interesting," and that she had continued listening and had heard statements that this was the best "stuff" they'd had for a long time and other remarks causing her to conclude that drugs were being discussed by the parties. (II R. 33, 39).[6]

6. Mrs. Padgett's testimony described the conversation she overheard as follows (II R. 31–33):

> A. With the calls that were going out I was quite busy and I could only ascertain they were not being charged. When a call came through to his room I wasn't busy and I connected him and he picked up and he answered the phone and as I went to unplug it, I heard, 'Good evening, Mr. Claiborne, you haven't let anybody near that trunk.' This was one sentence. Well, it was interesting.
> Q. Would you tell us what that sentence was, please.
> A. 'Good evening, Mr. Claiborne, you haven't let anyone near that trunk.'
> Q. Trunk?
> A. Yes.
> Q. What was the response given?
> A. He said no, he had the key in his pocket.

The question raised is serious because of the length of time Ms. Padgett admits staying on the line—up to five minutes.[7] *See State v. Dwyer*, 585 P.2d 900, 903 (Ariz. App.) (holding a 15-minute interception by an operator willful). We are also concerned about her remarks that the comments overheard were "interesting" and that they aroused her "curiosity." (II R. 31, 38).

■ Nevertheless, the question is whether the interception was done "willfully" within the meaning of 18 U.S.C. Sec. 2511(1)(a). The burden of proving that the interception was "willfully" done rested on the defendant as the party seeking to suppress the evidence. *United States v. Phillips*, 540 F.2d 319, 325 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611. Where such a motion to suppress is heard, the credibility of the witnesses, the weight to be given the evidence, and the drawing of inferences are for the trial judge. *United States v. Donahue*, 442 F.2d 1315, 1316 (10th Cir.). In view of the procedure followed at the motel we cannot say that overhearing the first remark must be held willful. And after hearing that opening remark, the listening which continued could be found not willful, as the trial court did.[8] We cannot agree that his findings here were clearly erroneous and thus they cannot be set aside. *United States v. Miles*, 449 F.2d 1272, 1274 (10th Cir.). And we feel that the findings lead to a reasonable and proper conclusion that the interception of the call was not unlawful. *State ex rel. Flournoy v. Wren*, 108 Ariz. 356, 498 P.2d 444, 448; *see United States v. Savage*, 564 F.2d 728, 731–32 (5th Cir.).[9]

Q. And then what transpired in the conversation?
A. They began to discuss how good things were going for the man that was calling in, he was saying how good things were going at his end and that that was the best stuff that they'd had for a long time and when he got back here they would have more money than they'd ever had.
Q. What else transpired during that conversation?
A. Mr. Claiborne told him about needing tires because the sheriff hung around the gas station and the tires were so bad that it would draw attention to the car. He told him how much it would cost to get the car fixed besides the tires. This man said, 'No problem, we'll send money Western Union.' Mr. Claiborne said that the tow truck operator had offered to take him to the Western Union Office to pick up the money.
Then they discussed the route that Mr. Claiborne—talked about this would never happen, but he was taking the back roads and he drove 12 hours out of his way because he got the wrong directions from somebody.
Q. At the time that you heard the comments concerning the stuff in the trunk and the fact, 'Have you let anyone near that trunk,' and, no, he's got the key in the pocket, and he said 'That's some of the best stuff we've ever gotten,' was that right at the beginning of the conversation?
A. Yes, sir, it was.
Q. Those are the first words you heard after you connected the line through, is that correct?
A. I never would have stayed on that long if it hadn't been.

Q. At what point did you disconnect your line?
A. He was telling him what was wrong with the car, why it broke down in the first place, and Mr. Priem came out and spoke to me and I unplugged it, because voices can be heard.
Q. Mr. Priem, is he the owner of Priem's Pride Motel?
A. Yes.

7. Mrs. Padgett said that her listening in continued for five minutes "at the most" (II R. 35) and that she did not think it lasted that long. (*Id.* at 40). At trial Ms. Padgett said she thought she listened in on the conversation for three or four minutes. (III R. 37).

8. The trial court cited *State ex rel. Flournoy v. Wren*, 108 Ariz. 356, 498 P.2d 444. We agree that it persuasively supports the court's conclusion that the operator did not willfully intercept the call. Moreover this conclusion is consistent with *United States v. Murdock*, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381, cited in the legislative history of the statute (*see* U.S.Code Cong. & Admin.News 1968, p. 2181) with respect to the meaning of "willfully" (with bad purpose; without justifiable excuse; stubbornly, obstinately, perversely, etc.). (290 U.S. at 394, 54 S.Ct. 223).

9. Defendant relies on *Nova v. State*, 346 So.2d 1214 (Fla.App.) and *Horn v. State*, 298 So.2d 194 (Fla.App.), *inter alia*. The *Nova* case held inadmissible under Florida law a conversation which a supervisor overheard with consent of the employee-recipient of a call; the court held the extension used for overhearing the call was not used in the ordinary course of business so as to come within a statutory exception. How-

## III

### The affidavit and the search warrant

Defendant next argues that there were many material false statements in the affidavit upon which the search warrant was based. He argues that when these statements are excised from the warrant there is insufficient information left to support a finding of probable cause. Thus all the fruits of the search of the co-defendant's car, which was made under the warrant, must be suppressed. In addition defendant says that the affidavit must fail because it does not identify the informer (*i. e.*, Mrs. Padgett) who actually overheard the phone conversation. Defendant reasons that hearsay is sufficient to warrant a finding of probable cause only if the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 is met, which is not the case here.[10]

We must examine the affidavit with care because the defendant charges that it contains numerous fatal inaccuracies and it is apparent that errors did abound, as discussed below. We have held that while not every misstatement in an affidavit will necessitate holding it invalid, where excising the inaccuracies does not leave enough information to meet the requirements of *Aguilar* and other Supreme Court decisions, then the warrant must be held invalid and evidence obtained as a result must be suppressed. *United States v. Harwood*, 470 F.2d 322, 325 (10th Cir.). The Supreme Court has since held in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676–77, 57 L.Ed.2d 667, that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.[11]

The errors in the affidavit before us are troublesome. However we realize that information must be marshalled and relayed and affidavits must be prepared under pressures of time and distance. We must keep in mind the rule that such affidavits should be judged in a common sense and realistic manner and warrants issued thereon should not be interpreted hypertechnically. *United States v. Berry*, 423 F.2d 142 (10th Cir.).

---

ever, the Florida Supreme Court vacated the judgment of the appellate court and reinstated the trial court's judgment, holding that the conversation was indeed overheard within the ordinary course of business. *State v. Nova*, 361 So.2d 411 (Fla.).

In the *Horn* case, a conversation overheard by a co-worker at a nursing home by lifting another receiver without any permission, was held inadmissible under a Florida statute banning willful interception of calls. Neither case involves issues close to our question and we are not persuaded by them.

10. *Aguilar* held that (378 U.S. at 114, 84 S.Ct. at 1514):

> Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States*, 376 U.S. 528, 84 S.Ct. 825, 11 L.Ed.2d 887, was 'credible' or his information 'reliable.'

11. The test applied in *Franks v. Delaware* seems stricter in the requirements it imposes on the movant seeking suppression of evidence than our *Harwood* opinion. However, because we conclude that the affidavit here would be sufficient even if the erroneous information is excised, we need not consider whether all the *Franks* requirements were satisfied by the movant Axselle here.

At the suppression hearing in the instant case several witnesses testified regarding the statements made by them and regarding certain statements attributed to them in the affidavit. The affiant also made a proffer of evidence that he had prepared the affidavit in a hectic, hurried atmosphere; that it was prepared on the basis of the best information he had available at that time; and that, although he had attempted to contact Mr. Priem before preparing the affidavit, he had been unable to do so. Defendant's counsel agreed to accept the affiant's statement as evidence. (II R. 89–90).

After the hearing the court found that several of the statements contained in the affidavit were inaccurate, including the statement that the description of Claiborne's car was given by Priem rather than Sheriff McKenney, the statement that Claiborne took his car to the garage after registering at the motel rather than before, the statement that Claiborne had placed a phone call to California rather than having received a phone call from Delaware, the statement that Priem rather than Mrs. Padgett overheard the telephone call, and the statement that Axselle was a known drug dealer in Carmel, California rather than Southern California.[12] Nevertheless, the court found, in his Memorandum and Order denying the motion to suppress, that even with these inaccuracies excised from the affidavit, sufficient information remained to support a finding of probable cause. (I R. 12–13).

After the excision of the misstatements, the affidavit still contained the following information: that a DEA agent relayed information to the affiant concerning an individual named Herbert Claiborne who was currently staying in an Abilene, Kansas motel; that Claiborne was staying at the motel while his car was being repaired at a local garage; that while he was staying at the motel a long distance call between Claiborne and another party was overheard through the motel switchboard; that during the conversation the parties discussed the "stuff" in the trunk of Claiborne's car and their desire to keep people away from the trunk; and that Claiborne was anxious about the car being at that particular garage because law enforcement personnel were in the area.

It is true that the affidavit erroneously stated that in the first call to Claiborne "drugs," "stuff," and "dope" were mentioned several times when actually there was only a single reference—one to "stuff." While the error is serious, as noted Mrs. Padgett herself drew the conclusion that drugs were being discussed and in the circumstances we feel the error does not seriously weaken the affidavit.

The affidavit also stated that the calling party agreed to send Claiborne money by Western Union; that Claiborne subsequently received $150 at the Western Union Terminal in Abilene from an individual named Jerry Axselle; that a review of DEA records showed Axselle to be a known drug dealer in another state; that a check of the home address which Claiborne gave when he registered at the motel was a vacant building; that subsequent investigation by a local law enforcement officer in Abilene showed that Claiborne's car was being serviced at the local garage; and that Clai-

---

12. The affidavit did erroneously state that Mr. Priem overheard the first call to Claiborne instead of Mrs. Padgett, and it said that the description of Claiborne's car was given by Mr. Priem when actually it was furnished by Sheriff McKenney. Such misnomers were not material. It does not appear that the showing of probable cause would have been deficient if the informant had been correctly named in each instance. *United States v. Powell,* 474 F.2d 615 (9th Cir.), *cert. denied,* 414 U.S. 836, 94 S.Ct. 181, 38 L.Ed.2d 71; *Maclean v. Trainor,* 365 F.Supp. 695, 698 (W.D.Pa.). Moreover the mis-nomers do not appear prejudicial to the defendant. *Cf. United States v. McCoy,* 478 F.2d 176, 180 (10th Cir.), *cert. denied,* 414 U.S. 828, 94 S.Ct. 53, 38 L.Ed.2d 62.

We note also that DEA Agent Bramwell admitted at the suppression hearing that, contrary to the affidavit, he did not know Mr. Priem and had never spoken to him and did not say to the affiant that he thought Priem was truthful. (II R. 84–85). These and other inaccuracies are also troublesome but we feel they do not destroy the sufficiency of the remainder of the affidavit.

borne told the repairmen to put new tires on the car rather than open the trunk to get the spare tire out.

■ From our review of the affidavit and the record we agree with the conclusion of the trial court that even with the inaccurate information removed, sufficient information remained for a finding of probable cause. Thus the inaccurate information was not "necessary to the finding of probable cause . . . ." *Franks v. Delaware, supra*, 438 U.S. at 156, 98 S.Ct. at 2677.

■ Further, defendant says that the requirements of *Aguilar* were not met because one of the main sources of information for the affidavit, Mrs. Padgett, was not named at all and the Government failed to carry its burden of showing circumstances demonstrating her reliability so that her information could be relied on. For reasons already stated, see note 12, *supra*, we feel the error in naming Mr. Priem, without naming Mrs. Padgett as the original source of information on the first call, was not prejudicial. We feel also that here there were other underlying circumstances presented which provided a substantial basis for crediting the hearsay information she furnished. *See Edmondson v. United States*, 402 F.2d 809, 812 (10th Cir.). The money order discussed in the call was sent; defendant did have a record of some drug activities; and Claiborne's address given to the motel turned out to be a vacant building.

In sum, we agree with the trial court's view that the inaccuracies and deficiencies in the affidavit do not require holding the warrant and search invalid.

## IV

### The telephone call from Claiborne to the defendant

Defendant also claims error in the denial of his motion to suppress a tape recording and all evidence concerning an alleged subsequent phone conversation between co-defendant Claiborne and defendant Axselle after Claiborne's arrest. He says that there was no sufficient showing of consent to the

recording of the call and that proper evidence was not introduced to identify him as the other party to the call. We disagree.

■ First, while Claiborne did not testify, there was testimony by DEA agent West that he asked Claiborne if he would mind if he tape recorded the conversation for use in court, and Claiborne consented. (III R. 9). In addition the circumstances shown by the testimony supported an inference of such consent. Claiborne went ahead with the call "after knowing what the law enforcement officers were about." *United States v. Bonanno*, 487 F.2d 654, 658–59 (2d Cir.).

In short the record amply supports the trial court's denial of the motion to suppress evidence relating to the call on the ground that there was consent by one party to the recording of the conversation. (III R. 20). The ruling is clearly correct. *See United States v. Quintana*, 457 F.2d 874, 878 (10th Cir.), *cert. denied*, 409 U.S. 877, 93 S.Ct. 128, 34 L.Ed.2d 130; 18 U.S.C. Sec. 2511(2)(c).

■ Second, the evidence of identification of defendant's voice was not deficient. Defendant argues that it was insufficient because Agent West was not shown to be an expert in voice identification, defendant's voice was not shown to have any peculiar characteristics, and West only claimed to have heard defendant's voice at one time other than during the call in question. That other occasion was at a hearing 30 days after the conversation when Agent West heard defendant's voice in person. The arguments go to the weight of the evidence and it was sufficient proof of voice identification to go to the jury. *United States v. Rizzo*, 492 F.2d 443, 448 (2d Cir.), *cert. denied*, 417 U.S. 944, 94 S.Ct. 3069, 41 L.Ed.2d 665; *United States v. Watson*, 594 F.2d 1330, 1335 (10th Cir.); *see* Rule 901(b)(5), F.R.E.

Defendant's remaining contentions require no further discussion. After considering all of his arguments we are not persuaded that there was any reversible error.

AFFIRMED.