**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 24, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

KEITH McDANIEL,

Defendant - Appellant.

No. 09-3273
(D.C. No. 2:07-CR-20168-JWL-22)
(D. Kan. )

**ORDER AND JUDGMENT**[*]

Before **O'BRIEN**, Circuit Judge, and **SEYMOUR** and **TACHA**, Senior Circuit Judges.

In 2008, defendant-appellant Keith McDaniel was charged, along with twenty-three other individuals, with one count of conspiracy to manufacture, possess with intent to distribute, and to distribute fifty grams or more of cocaine base and to possess with intent to distribute and to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(ii), (b)(1)(A)(iii), 846, and 18 U.S.C. § 2. At trial, the district court admitted into evidence multiple recorded telephone conversations between the conspirators

---

[*]This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

which investigating officers had intercepted through wiretaps. Seven of these conversations involved Mr. McDaniel. The jury ultimately found Mr. McDaniel guilty of conspiracy. On appeal, Mr. McDaniel contends that the district court erred in admitting the recorded conversations. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

Mr. McDaniel's conviction stems from his participation in a vast conspiracy to distribute cocaine and cocaine base in and around Kansas City, Kansas and Kansas City, Missouri from January 2006 to November 2007. The Drug Enforcement Administration began investigating the conspiracy in 2006 at the request of the Leavenworth, Kansas police department. After attempting various traditional investigative techniques (e.g., surveillance, confidential informants, and search warrants) and finding them to be ineffective means of uncovering the size and scope of the conspiracy, federal law enforcement officers decided to seek wiretaps. From August to October 2007, the officers applied for and obtained wiretaps on several suspected conspirators' phones. The conversations intercepted by the officers implicated Mr. McDaniel, and he was eventually arrested on February 4, 2008.

Prior to trial, several of Mr. McDaniel's co-defendants sought to suppress the wiretap evidence because of alleged deficiencies in the wiretap applications and in the district judge's approval of those applications. Mr. McDaniel joined in

two of the motions. The district court denied the motions on February 18, 2009, and Mr. McDaniel proceeded to trial along with seven of his co-defendants.

At trial, the government sought to introduce, through Officer Eric Jones, numerous recorded conversations the investigating officers had intercepted through the wiretaps. Prior to playing any of the conversations for the jury, Officer Jones testified as to his familiarity with the voices on the tapes. With respect to Mr. McDaniel, Officer Jones testified as follows:

> OFFICER JONES: I have spoken with Mr. McDaniel, as well as Mr. McDaniel, for instance, is one that we didn't positively identify until almost the end of our intercepts, and towards the end of the investigation we had an idea that it was him. We just didn't—we couldn't positively say initially that it was him until other aspects kind of came into play through surveillance and some other incidences later.

> PROSECUTOR: As a result of talking to him and conducting surveillance, you're able to identify phone calls associated or between [co-defendant] Monterial Wesley and Mr. McDaniel?

> OFFICER JONES: Yes.

Immediately following this testimony, the prosecutor explained that she had presented her foundation for the recorded conversations and intended to play the tapes for the jury. The district court then invited any objections to the admission of the recordings, and Mr. McDaniel was among the defendants who objected. Specifically, Mr. McDaniel argued that Officer Jones had not established that he was sufficiently familiar with Mr. McDaniel's voice to identify him as a speaker on any of the recordings. Following a brief discussion of the various defendants'

objections, the district court conditionally admitted all of the recordings pursuant to Fed. R. Evid. 104.  Officer Jones subsequently identified Mr. McDaniel's voice on seven different recordings containing incriminating conversations.

In addition to Officer Jones's voice identification testimony, Danny Tarrants testified that he and Mr. McDaniel had been friends since 2004 and that they had maintained consistent contact from 2004 to 2007.  When the government stated its intent to have Mr. Tarrants identify Mr. McDaniel's voice on the recordings, Mr. McDaniel's counsel requested that the government be required to play a series of conversations, some involving Mr. McDaniel and some not involving Mr. McDaniel, in an effort to test Mr. Tarrants's ability to identify Mr. McDaniel's voice.  The government agreed to this procedure and it proceeded to play three conversations for Mr. Tarrants, only one of which was a conversation that Officer Jones had identified as involving Mr. McDaniel.  Consistent with Officer Jones's testimony, Mr. Tarrants identified Mr. McDaniel's voice on the one conversation and did not identify Mr. McDaniel's voice on the other two.

Finally, the government presented testimony from Agent Timothy McCue, one of the leading officers in the conspiracy investigation.  Agent McCue testified that he had listened to "the majority, if not all, of [the intercepted] phone calls" during the course of the investigation.  He further stated that he had participated in the arrest of Mr. McDaniel and that he had a conversation with him at the time of the arrest.  This conversation, Agent McCue testified, confirmed his belief that

Mr. McDaniel was the speaker on the phone calls the officers had previously associated with him during the investigation. On cross-examination, Agent McCue expanded on the extent of his familiarity with Mr. McDaniel, stating that he transported Mr. McDaniel to jail following his arrest and obtained biographical information from Mr. McDaniel.

After the government presented its witnesses and just before it concluded its case in chief, the district court made a formal, unconditional ruling on the record with respect to the admissibility of the recordings. The court held that "on each of the telephone calls in question . . . I do find that either by or in combination with the testimony of people who expressed familiarity with the voices and/or the circumstances of the phone calls sufficient foundation has been laid by the government to establish the authenticity of those calls." With respect to Mr. McDaniel specifically, the district court stated that "Mr. Jones testified about his firsthand knowledge of Mr. McDaniel's voice, identified his voice on those calls, and Mr. McCue provided corroboration of that particular testimony. There's also some circumstantial evidence that ties those calls together as well."

The jury ultimately found Mr. McDaniel guilty of conspiracy, and he was sentenced to 360 months' imprisonment. This appeal followed.

## II. DISCUSSION

On appeal, Mr. McDaniel challenges only the admissibility of the recorded conversations. Specifically, he contends that the district court erred in admitting

the conversations because: (1) the government witnesses failed to establish sufficient familiarity with Mr. McDaniel's voice to identify it on the recordings; and (2) the wiretap applications were deficient and the wiretaps were not necessary to the investigation.

## A.    Voice Identification

We review a district court's decision to admit evidence for abuse of discretion. *United States v. Parker*, 551 F.3d 1167, 1171 (10th Cir. 2008). Under Fed. R. Evid. 901, voice identification testimony is admissible when the witness has heard the voice "at any time under circumstances connecting it with the alleged speaker." We have repeatedly instructed that Rule 901 sets a low bar for admissibility, requiring only that the witness demonstrate "minimal familiarity" with the voice being identified. *See, e.g.*, *United States v. Bush*, 405 F.3d 909, 919 (10th Cir. 2005); *Parker*, 551 F.3d at 1172; *United States v. Zepeda-Lopez*, 478 F.3d 1213, 1219 (10th Cir. 2007). "Once minimal familiarity is satisfied, it is for the jury to assess any issues regarding the extent of the witnesses' familiarity with the voice." *Bush*, 405 F.3d at 919; *see also United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir. 1979).

Mr. McDaniel contends that Officer Jones's testimony was not specific enough to establish minimal familiarity because it is unclear when Officer Jones and Mr. McDaniel spoke, for how long they spoke, where they spoke, or how much Mr. McDaniel said during their conversation. Indeed, Mr. McDaniel asserts

that "[f]or all that can be gleaned from Officer Jones's testimony, it may have been an entirely one-sided conversation, with Mr. McDaniel saying virtually nothing." These arguments implicate the extent of Officer Jones's familiarity with Mr. McDaniel's voice and thus go to the weight of the voice identification testimony, not its admissibility. *See Axselle*, 604 F.2d at 1338 (holding that a witness who testified that he had heard a defendant's voice "at one time other than during the call in question" had established minimal familiarity, and that defendant's arguments regarding the extent of the witness's familiarity "go to the weight of the evidence"); *see also Bush*, 405 F.3d at 919. Indeed, Rule 901 only requires that the witness have heard the voice "at any time under circumstances connecting it with the alleged speaker." Here, Officer Jones testified that he had "spoken with Mr. McDaniel," and in response to the prosecutor's questioning, he confirmed that he was familiar with Mr. McDaniel's voice "[a]s a result of talking to him and conducting surveillance." The district court did not abuse its discretion in concluding that this testimony provided sufficient foundation to admit the recordings.[1]

B.  Wiretaps

Pursuant to Fed. R. App. P. 28(i), Mr. McDaniel adopts the arguments of

---

[1]Because we conclude that Officer Jones's testimony provided sufficient foundation to admit the recordings, we need not address Mr. McDaniel's additional arguments that Mr. Tarrants and Agent McCue failed to adequately authenticate the recordings.

his co-defendant, Shevel Foy, with respect to the legality of the wiretaps. Specifically, he contends that: (1) the officers failed to properly establish authorization in their wiretap applications; and (2) the affidavits in support of the wiretaps did not establish necessity.  We adopt our analysis from Case No. 09-3314, *United States v. Foy*, and affirm the district court's refusal to suppress the wiretap evidence for the reasons stated in that opinion.

### III.  CONCLUSION

For the foregoing reasons, we AFFIRM.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge