COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| TIMOTHY EARL WESLEY, | § | No. 08-14-00121-CR |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 213th District Court |
| | § | |
| THE STATE OF TEXAS, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC#1290302D) |
| | § | |

## **O P I N I O N**

Appellant Timothy Earl Wesley was convicted of continuous sexual abuse of a child under TEX.PENAL CODE ANN. § 21.02 (West Supp. 2015). His appeal challenges the trial court's adverse ruling on a motion to suppress. Finding no error in that ruling, we affirm.[1]

## **FACTUAL SUMMARY**

We recite only so much of the underlying facts as are necessary to decide the limited issues before us.

### *Underlying Facts*

Appellant was charged with continuous sexual abuse of a child. The child, whom we refer to R.K., was his stepdaughter. She was eleven to twelve years of age during the events

---

[1] This case was transferred from our sister court in Fort Worth pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX.GOV'T CODE ANN. § 73.001 (West 2013). We follow the precedents of the Fort Worth Court to the extent they might conflict with our own. *See* TEX.R.APP. P. 41.3.

described here, and Appellant was in his late 40s. R.K.'s mother married Appellant when R.K. was eleven. Appellant moved in with R.K.'s mother, R.K., and her two siblings, all children from a previous marriage. Sometime after he moved in, Appellant initiated sexual contact with R.K. The contact progressed to frequent sexual intercourse.

While being examined at a local hospital for complaints of pain, R.K. confided to a nurse about her sexual contact with Appellant. The police became involved, leading to Appellant's arrest, but the charges were dropped after R.K. recanted the allegation. Appellant lived apart from R.K.'s mother after the arrest, but he later moved back in. When he did so, his sexual relationship with R.K. resumed as well. Appellant and R.K.'s mother then permanently separated and Appellant moved out. But R.K. and Appellant kept in contact and they soon resumed their sexual relationship. Appellant would pick her up on a weekly basis and drive to a nearby wooded area, or sometimes she would sneak him into the house.

*The Samsung Cell Phone*

During this time, Appellant gave R.K. a Samsung cell phone. He told her that she could only use the phone to contact him and one of her friends. He also told her not to tell anyone about the phone. R.K.'s mother discovered the cell phone and viewed explicit text messages and photographs on it, leading the mother to again contact the police. A responding officer seized the phone and stored it in an evidence locker. Based on statements made by the mother, R.K., and a physical exam of R.K., the Grand Prairie police obtained a search warrant for the Samsung phone to be executed at the evidence locker room.

*The Recorded Phone Call*

Following the issuance of the search warrant, R.K. accompanied her mother to the Grand Prairie police station where they met with Sergeants Alan Frizzell and Christie Martinez. R.K.

was twelve by this time.

The meeting is reflected on State Exhibit One which is a DVD video and audio recording of a conference room at the police station. The video is approximately fifty minutes long and begins with R.K., her mother, and Sergeants Alan Frizzell and Martinez seated in the room. R.K. acknowledged that the Samsung phone was given to her by Appellant. The officers then began reading the text messages on the Samsung phone. The mother, the officers, and R.K. discussed how to respond to a recent text message from Appellant. The discussion turned to having Appellant engage in a phone call whereby he would admit to the sexual relationship with R.K. Officer Martinez left the room to retrieve her recording equipment. When she returned, R.K.'s mother, by agreement, left the room. The officers explained to R.K. how the recording device worked, and she initiated the first of two calls to Appellant. In the first call, they discussed meeting later that afternoon and she asked him to send a photograph as the call concluded. Several minutes later he sent a photo of an erect penis. The second call included R.K. and Appellant graphically discussing sexual acts they will engage in when they meet. Appellant also stated in the recording that the two had had thirty to forty sexual encounters over the past several months.

When Appellant was arrested that same day, the police seized his cell phone. Pursuant to a warrant, the contents of that phone were examined, and it contained some of the same photos as had been sent or received on the Samsung phone. The police also found a video of Appellant and R.K. apparently having sexual intercourse.

*The Motion to Suppress and Suppression Hearing*

Appellant filed a motion to suppress which sought to exclude the Samsung cell phone and its contents, Appellant's phone and its contents, and the recorded conversation. Only the issues

3

of the Samsung cell phone and the recorded conversations are challenged on appeal. Appellant contended below that the warrant to seize the Samsung cell phone lacked probable cause and only extended to the phone itself, not its contents. The only evidence that Appellant offered at the suppression hearing with regard to the Samsung cell phone was the search warrant which contains a supporting affidavit from an investigating officer. The affidavit stated that appellant gave R.K. the phone as their means of communication and he told her not to tell anyone about the phone. Appellant's counsel conceded at the hearing that Appellant had bought the phone for R.K. to use. The trial court denied that portion of the motion because Appellant had no standing to raise a Fourth Amendment challenge to a phone that he had given to R.K.

Appellant also challenged the recorded phone conversation. Noting that the State is precluded from using evidence that is illegally obtained, he claimed that the call was illegally recorded under TEX.PENAL CODE ANN. § 16.02 (West Supp. 2015). That statute prohibits the interception of a wire communication unless (as is relevant here) one of the participants intercepts the call, or consents in advance to the interception. *Id.* at § 16.02(c)(3)(A)(B) and (c)(4)(A)(B). Appellant argued below that R.K. as a minor cannot consent, and the mother never did consent.

Officer Martinez testified at the suppression hearing that both R.K. and her mother cooperated in the phone call and consented to the recording. She agreed, however, that all the discussions regarding consent and the call are contained on the DVD (State's Exhibit One) which is a part of our record. The term "consent" was never directly used in the conversations reflected on the DVD. The trial court overruled the motion to suppress, finding there was consent by both R.K. and her mother.

*The Trial*

4

Appellant re-urged the illegality of the State's evidence at trial. Appellant sought and obtained an instruction in the jury charge which would allow the jury to disregard any evidence illegally obtained. Appellant cross-examined Sergeant Martinez at trial, again pressing his contention that the mother never consented to the recorded phone call, and that R.K. was too young to consent. R.K. testified at trial that both she and her mother were aware of and consented to recording the call. Appellant's counsel pressed the illegality defense in closing argument. The jury apparently disagreed and convicted Appellant of continuous sexual assault.[2] The trial court sentenced him to sixty years' confinement.

## SUPPRESSION ISSUES

Appellant raises two issues for our consideration. Issue One contends the trial court erred in not suppressing the contents of the Samsung cell phone that he had given to R.K. In Issue Two, he presses the claim that the recorded phone conversation was illegally obtained because neither party to the conversation consented to it.

### *Seizure of the Phone*

The Fourth Amendment protects one in their person, houses, papers, and effects against unreasonable searches and seizures. U.S. CONST. Amend. IV. But an accused may challenge a search or seizure under the federal (and state constitution) only if he has a legitimate expectation of privacy in the thing being searched or seized. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 (1978); *Granados v. State*, 85 S.W.3d 217, 222–23 (Tex.Crim.App. 2002). The accused carries the burden of demonstrating such a legitimate expectation of privacy, which the trial court here in short-hand referred to as standing. *Granados,* 85 S.W.3d at 223; *Calloway v. State*, 743 S.W.2d 645, 650 (Tex.Crim.App. 1988)(because the accused has greater access to the relevant evidence, he has the burden of proving facts establishing a legitimate

---

[2] The record shows the jury deliberated for eleven minutes before reaching a verdict.

expectation of privacy).

Whether a defendant has standing to contest a search and seizure is a question of law which we review *de novo*. *Parker v. State*, 182 S.W.3d 923, 925 (Tex.Crim.App. 2006). But these issues arise in fact-specific, and often fact-disputed, situations where credibility and demeanor come into play. In that situation, we use a bifurcated standard of review giving "almost total deference to a trial court's determination of historical facts" and review *de novo* the court's application of the law to those facts. *Montanez v. State*, 195 S.W.3d 101, 106 (Tex.Crim.App. 2006). Mixed questions of law and fact that do not turn on the credibility or demeanor of witnesses are reviewed *de novo*. *Id.*[3] When the trial court makes no explicit findings of historical facts, as in this case, we view the evidence in the light most favorable to the trial court's ruling. *Id.*

In making that determination, we would normally only consider the evidence admitted at the suppression hearing. *Rachal v. State*, 917 S.W.2d 799, 809 (Tex.Crim.App. 1996). However, this general rule does not apply when the suppression hearing issues have been consensually re-litigated by the parties during a trial on the merits. *Id.* In that instance, we may also consider the relevant trial testimony. *Id.*; *Flores v. State*, 299 S.W.3d 843, 850 (Tex.App.-- El Paso 2009, pet ref'd).

To establish Fourth Amendment standing, appellant must show he had: (1) a subjective expectation of privacy (in the phone) that (2) society is prepared to recognize as reasonable. *See Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979); *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516-17, 19 L.Ed.2d 576 (1967)(Harlan, J.,

---

[3] Were we to reach the merits of Appellant's challenge to the search warrant itself, we would apply a highly deferential standard to the magistrate's decision based only on the four corners of the search warrant affidavit. *State v. McLain*, 337 S.W.3d 268, 271 (Tex.Crim.App. 2011). But we note that Appellant has not briefed the merits of the underlying challenge to the search warrant and has only addressed his standing to make such a challenge.

concurring); *Parker*, 182 S.W.3d at 926. With regard to the subjective element, the only evidence admitted at the suppression hearing was an affidavit attached to a search warrant attesting that appellant told R.K. not to tell anyone about the phone. At trial, R.K. additionally testified that she asked for the phone and appellant gave it to her, allowing her to only use it to call him and one other of her friends. Even assuming this meager evidence meets the subjective element, Appellant failed to prove the second objective element: that society should recognize a privacy right in this circumstance. Specifically here, we address an adult living outside the household secretly giving a phone to a minor in the household for the purposes of secret communications.

We consider several factors in determining whether an accused's claim of privacy is objectively reasonable: (1) whether the accused has a property or possessory interest in the item; (2) whether he legitimately possessed the item; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, before the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the item to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996); *Smith v. State*, 176 S.W.3d 907, 913 (Tex.App.--Dallas 2005, pet. ref'd). None of these factors is dispositive; rather, "we examine the circumstances surrounding the search in their totality." *Smith*, 176 S.W.3d at 913.

The evidence here does not establish that Appellant's expectation of privacy was one that society is prepared to recognize as objectively reasonable under the circumstances. Our conclusion is grounded on the *totality* of the circumstances established by the evidence. There was, for example, no evidence that Appellant had complete dominion or control over the phone. Because he gave the phone to R.K., he effectively concedes he lost whatever property interest he

may have had in it. *See State v. Granville*, 423 S.W.3d 399, 409 (Tex.Crim.App. 2014)("Although a person may have a reasonable and legitimate expectation of privacy in the contents of his cell phone, he may lose that expectation under some circumstances, such as if he abandons his cell phone, *lends it to others to use*, or gives his consent to its search.")[Emphasis added]. And in our view, in circumstances such as these, our society is not willing to sanction as objectively reasonable an adult giving a child a cell phone with the intent that it should be kept a secret from the custodial parent. *See Young v. State*, No. 05-09-00267-CR, 2010 WL 5072174, at *4 (Tex.App.--Dallas 2010, pet ref'd)(not designated for publication)(adult female who had given a minor, not her son, a cell phone to use did not have an objectively reasonable expectation of privacy in the phone). We overrule Issue One.

### *Admissibility of the Telephone Recording*

"No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." TEX.CODE CRIM.PROC.ANN. art 38.23(a)(West 2005). Relying on this rule, Appellant urges that his recorded phone call with R.K. was illegally obtained under TEX.PENAL CODE ANN. § 16.02 (West Supp. 2014). That statute prohibits the interception of a telephone call *unless:* "the person is a party to the communication" or "one of the parties to the communication has given prior consent to the interception." *Id*. at § 16.02(c)(4)(A)(B). Appellant contends there is no evidence to support the mother's consent because she never expressed it on the record, and she left the room before the recorded conversation took place. Before the trial court, Appellant contended R.K. was legally incapable of giving consent. As a general rule, we review a trial court's decision to admit or exclude evidence for an abuse of discretion and we will not reverse

8

the ruling as long as it falls within the zone of reasonable disagreement. *See Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex.Crim.App. 2006).

We disagree with Appellant's argument on several levels. First, aside from the consent issue, one of the exceptions under the wiretap statute is when the person charged is a party to the conversation. TEX.PENAL CODE ANN. § 16.02(c)(4)(A)(B). The trial court could have found that R.K. not only consented to the recording, but she actually participated in the recording process itself. She initiated the call only once the recording device was hooked up. She stated the date and time of the call on the recording, before she dialed the number. She held the cell phone next to a specific microphone so the call could be recorded. As a party to the conversation making the recording, her consent, and thus her age, are not at issue.

Even were RK's consent the issue, the trial court could have found she validly gave consent. Both she and the detective testified that she gave consent. On State's Exhibit One, the detective can be heard explaining to her how the recording process would work before she made the call. Even if the word "consent" is not formally used, her participation in the telephone call in these circumstances would be some evidence of consent. Consent to interception of a wire communication can be inferred from a knowing participation in the telephone call being recorded. *United States v. Axselle*, 604 F.2d 1330, 1338 (10th Cir. 1979); *United States v. Bonanno*, 487 F.2d 654, 658–59 (2d Cir. 1973). From the circumstances surrounding the two phone calls, the trial court could have properly inferred that R.K. consented to the recording of her telephone conversation with Appellant. *Cf. Allen v. State*, 479 S.W.3d 341, 345 (Tex.App.-- El Paso 2015, no pet.)("The evidence shows that T.B. knowingly participated in the telephone call with full knowledge that Detective Carney was recording the conversation."); *Mitchell v. State*, No. 03-09-00643-CR, 2010 WL 5019123, at *1 n.1 (Tex.App.--Austin Dec. 8, 2010, no

9

pet.)(mem. op., not designated for publication)("While the record does not reflect whether the victim specifically consented to the call being recorded or just consented to law enforcement listening in on the call" consent to listen is the same as consent to interception thus making the tape admissible).

Nor would R.K.'s age automatically disqualify her from giving consent. Appellant relied below on the TEX.CIV.PRAC.&REM.CODE ANN. § 129.001 (West 2011)("The age of majority in this state is 18 years."). He does not demonstrate why this definition controls here, and does not present any arguments about R.K.'s consent. We note that the Court of Criminal Appeals takes a flexible approach in Fourth Amendment consent issues regarding minors. In *Limon v. State*, 340 S.W.3d 753, 757 (Tex.Crim.App. 2011), the court concluded that a teenager had apparent authority to give consent to the police to enter a house late at night. "Under given circumstances, and taking into account widely shared social expectations and commonly held understanding, it may be reasonable or unreasonable to believe that a child has authority to consent to a particular intrusion." *Id.* [Omitting internal quotations]; *see also Green v. State*, No. 02-10-00082-CR, 2011 WL 3426278, at *3 (Tex.App.--Fort Worth Aug. 4, 2011, pet. ref'd)(mem. op., not designated for publication)(sixteen year old under circumstances of that case could consent to seizure of material from defendant's bedroom); *Russell v. State,* 739 S.W.2d 923, 927 (Tex.App.--Dallas 1987, pet. dism'd)(holding under circumstances of that case sixteen-year-old defendant freely and voluntarily consented to search of her residence).[4]

The trial court here specifically stated that R.K. had consented to the recording when the

---

[4] Several federal circuits have upheld searches based on a minor's apparent authority to consent to the search of a premises. *Lenz v. Winburn*, 51 F.3d 1540, 1548 (11th Cir. 1995)(nine year old child had authority to consent to her guardian ad litem's entry into their grandparent's home); *United States v. Clutter,* 914 F.2d 775, 779 (6th Cir. 1990)(search of a residence conducted with the consent of a defendant's fourteen-, twelve-, and ten-year-old children was valid); *United States v. Gutierrez–Hermosillo*, 142 F.3d 1225, 1231 (10th Cir. 1998)(warrantless search by the police following their admission into the defendant's motel room by his fourteen-year-old daughter was valid).

10

court denied the motion to suppress. An implied finding supporting that ruling was that R.K. had the sufficient understanding and maturity to give that consent. Appellant does not attack that finding on appeal. Below, Appellant only contended that as a *per se* rule a minor could not consent to recording a conversation. Finding that contention at odds with *Limon*, we overrule Issue Two.

Having overruled Issues One and Two, we affirm the conviction below.


April 29, 2016

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.

(Do Not Publish)